UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARON M. TORRES,

                           **Plaintiff,**

-against-                                       5:14-CV-1082

CORTLAND ENT, P.C., its agents,
Managers, and Assigns,

                           **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff Sharon M. Torres alleges race and national origin employment discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). *See* Am. Compl. Dkt. # 20. Defendant Cortland ENT, P.C. ("Defendant" or "Cortland") moves to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and (6). Dkt. # 21. Plaintiff opposes the motion, Dkt. # 23, and Defendant has filed a Reply. Dkt. # 24.

The Court decides the motion on the basis of the parties' submissions without oral argument. For the reasons that follow, the motion is granted.

1

## II.   BACKGROUND[1]

The operative pleading is the Amended Complaint, which was filed following the Court's August 12, 2015 Decision and Order that dismissed the Complaint but granted Plaintiff leave to replead certain claims. Familiarity with this Decision and Order is presumed.

The Amended Complaint, like the Complaint, is hardly a model of pleading clarity.[2] Suffice it to say that Plaintiff alleges claims of race and national origin-based discrimination, including hostile work environment claims arising from co-worker harassment "from September 2001 until [her discharge] on June 24, 2013." Am. Compl. ¶ 5. Plaintiff contends that the discriminatory conduct occurred because she is African-American and Hispanic. *Id.* ¶ 8.[3]

Plaintiff alleges that she was hired on May 23, 2011 to work as a receptionist. *Id.* While still in training, coworker Barbara Barron told Plaintiff: "You can't do anything right," and "You do not even know how to answer a phone." *Id.*   Plaintiff further alleges that "[t]he abuse from Barron and other [*sic*] escalated in the coming months." *Id.*  In September

---

[1] For the purposes of this motion, the Complaint's factual allegations are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

[2] Both the Complaint and Amended Complaint were drafted by Plaintiff's attorney. Other than minor differences, and the exclusion of Manoj Kumar, Cortland's CEO, as a defendant, the two pleadings are the same.

[3] Paragraph 8 of the Amended Complaint, which appears under the subheading "Facts," begins in the middle of page 2 and ends in the middle of page 5.  There are no separately numbered sub-paragraphs within Paragraph 8.  Rather, Plaintiff asserts all of the facts comprising her claims in this long, run-on paragraph. This style of pleading violates Fed. R. Civ. P. 10(b), which requires that "[a] party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

2

2011, Barron complained about a "bad odor," and told Plaintiff that her perfume was making Barron sick. *Id.* Plaintiff then stopped wearing her normal perfume and purchased a fragrance worn by a coworker. *Id.* However, "[w]hen Plaintiff wore this fragrance to work, Barron complained about how [the fragrance] was odiferous when Plaintiff wore [it]." *Id.*

Plaintiff also alleges that "[o]n several occasions over the next few weeks," coworkers "wore such copious amounts of perfume that their smell would linger for ten minutes after they had departed. But, Barron would stand for extended periods talking to them while they wore their fragrances. Barron only complained about Plaintiff's smell, even when Plaintiff wore the same perfume as the other employees." *Id.* Because Plaintiff does not specify the date that she changed her perfume, it is unclear the date that the subsequent conduct occurred. In the context of the allegations contained in the Amended Complaint, this subsequent harassment appears to have occurred in September, October, or November 2011.

Plaintiff then asserts that "[a] few days later, Barron came into Plaintiff's office, loudly stated 'What smells in here?,'" and asserted that Plaintiff's perfume was making her sick. *Id.* Because Plaintiff does not specify the date that this conduct occurred, or the date from which this conduct followed, it is impossible to determine precisely when it occurred. From the context of the factual allegations, it appears to have occurred in late 2011.

Plaintiff contends that, on an unspecified date, she "went to management again and spoke with [Office Manager Stacie] McMullin and [Cortland CEO] Manoj Kumar, MD,

3

about Barron's behavior." *Id.* Plaintiff was told that she could wear whatever fragrance she desired, and if there were complaints, the complainers should direct their concerns to Dr. Kumar. *Id.* Given the context of the allegations in the Amended Complaint, it appears that Plaintiff went to the management office and spoke about Barron's behavior in late 2011 or early 2012.

Plaintiff also asserts that "[s]oon thereafter, [she] was approached by Cathy Christopher, head of Human Resources/Finance at about 11:00 a.m. Christopher requested that Plaintiff go home and take a shower because her perfume was making Barron and [another coworker ] sick." *Id.* Plaintiff contends "that she did not have perfume on that day," and had just showered at 5:30 a.m. *Id.* She further asserts that she asked two coworkers to "smell her for perfume," and both said they could faintly smell coconut but not any perfume. *Id.* Plaintiff then instructed Christopher that Kumar told her that she could wear any perfume that she liked, and if there was a problem it should be addressed to Kumar. *Id.* Nonetheless, Christopher told Plaintiff to go home and take a shower. *Id.* Plaintiff declined to do. *Id.* That night, "as instructed by Defendant(s) [she] did not return to work until a week and a half later when Kumar and management requested she return." *Id.* Again, Plaintiff provides no specification as to when this conduct, and her absence from work, occurred, but given the context in which the allegation is made, it appears to have occurred in late 2011 our early 2012.

Plaintiff also asserts: "In the next few months, Plaintiff was told by McMullin that 'Barron and the other girls in the office stated that people of her color smell differently when they wear perfume.'" *Id.* Once again, Plaintiff provides no specification as to when

4

this conduct occurred. It is unclear whether Plaintiff contends that *at some point* during "the next few months" following McMullin telling her to leave work and take a shower that McMullin told her that the "other girls in the office" were stating "that people of her color smell differently when they wear perfume," or if McMullin told her this repeatedly over "the next few months."

Plaintiff also asserts: "In addition to the complaints about how Plaintiff smelled differently, Plaintiff was not allowed to eat her lunch at her desk like all of the other workers. Management told Plaintiff that she could not eat breakfast or lunch at her desk because her food 'smells bad.' So, Plaintiff was the only person who had to eat her meals in the conference room, segregated from the other workers. Plaintiff is the only other non-Caucasian working at Cortland ENT, save for Manoj [Kumar]." *Id.* Similar to the previous allegations, Plaintiff provides no specific time-frame when this conduct occurred.

Plaintiff asserts that "[a]s a result of these and numerous other degrading comments, in June 2012, Plaintiff began to have emotional issues, fits of uncontrollable crying, anger issues, anxiety/panic attacks, has been unable to sleep, and was prescribed medication for these ailments. Also, she has been regularly attending weekly mental health counseling sessions." *Id.* Plaintiff supports this allegation by reference to her EEOC Intake Questionnaire attached to the Amended Complaint, but neither the Intake Questionnaire nor Plaintiff's notes attached to the Intake Questionnaire provide any specification as to the dates of the alleged discriminatory conduct other than to assert that "the discrimination" occurred from "August 2011 to September 2011, [and] in addition there are other numerous incidents that occurred from September 2011 until my final [*sic*]

5

of employment." Intake Questionnaire, ¶ 5.[4]

It is also alleged in the Amended Complaint:

Plaintiff was treated differently than the other employees during her entire employment at Cortland ENT because she was African-American and Hispanic. Manoj Kumar, MD, CEO of Cortland ENT, was aware of the behavior of the other employees toward Plaintiff, but was unsuccessful in curtailing the objectionable behaviors. As a result of that ongoing and continued hostile treatment, Plaintiff discontinued working at Cortland ENT on June 24, 2013.

*Id.*

Plaintiff asserts that it "is [her] best recollection" that she filed a charge of discrimination "with the New York State Division of Human Rights or the New York City Commission of Human Rights," and the Equal Opportunity Commission, on August 2, 2013.  *Id.* ¶¶ 9 and 10; *see* Am. Compl. Ex 2 (EEOC Intake Questionnaire dated August 2, 2013).

## III.   STANDARD OF REVIEW[5]

On a motion to dismiss under Rule 12(b)(6), the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] Plaintiff asserts in her notes attached to the Intake Questionnaire that Barbara Baron was terminated "the first week of November 2012," but she provides no further specification as to the dates of the alleged discrimination. *See* Dkt. # 20-3.

[5] Although Defendant brings the motion under both Rules 12(b)(1) and 12(b)(6), the Second Circuit has held that that "[t]he weight of precedent demonstrates that administrative exhaustion is not a *jurisdictional* requirement; rather, it is merely a precondition of suit . . . ." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015))(emphasis in original). Thus, the Court considers the motion only under Rule 12 (b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   While the Federal Rules of Civil Procedure "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant- harmed-me-accusation." *Id.* (citation and internal quotation marks omitted).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp.3d 396, 401 (E.D.N.Y. 2014).

## IV.   DISCUSSION

### a.  Timeliness of Title VII Claims

Plaintiff asserts that "Defendant(s)[6] discriminated against [*sic*] and created a race-

---

[6] Throughout the Amended Complaint, Plaintiff identifies the opposing party as "Defendant(s)," but identifies Cortland ENT, P.C. as the sole defendant. *See* Am. Compl. ¶ 2.  It is unclear whether Plaintiff is of the mistaken belief that Cortland's "Agents, Managers, and Assigns," *see id. Caption*, can be held individually responsible for the alleged Title VII claims against Cortland, but the August 12, 2015 Decision and Order should have made it perfectly clear that, in the Second Circuit, individuals may not be held liable under Title VII. *See* 8/12/15 Dec. & Ord., p. 4 (citing *Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998)).  Moreover, Plaintiff has not alleged (either in the Complaint or in the Amended Complaint) any claims under the New York State Human Rights Law.  Accordingly, the Court treats Cortland
(continued...)

based hostile work environment based on Plaintiff's Race [*sic*] (Black/African-American) and National Origin [*sic*] (Hispanic)." Am. Compl. ¶ 7. The Court will treat this allegation as asserting discrimination claims sounding in disparate treatment and hostile work environment. Defendant contends that these claims are barred because Plaintiff failed to timely file an administrative charge concerning the underlying conduct.

### 1. Administrative Filing Requirement

"It has long been the rule that a Title VII plaintiff alleging that she was the victim of employment discrimination may not seek relief in a federal court until she timely exhausts her administrative remedies before the U.S. Equal Employment Opportunity Commission ('EEOC')." *Hansen v. Jones Lang LaSalle Americas, Inc.*, 103 F. Supp. 3d 221, 222 (D. Conn. 2015). As indicated in the Court's August 12, 2015 Decision and Order, "[i]n a state such as New York, where there is an administrative agency authorized to investigate claims of discrimination, a Title VII claim is only actionable with respect to incidents that occur within 300 days of the filing of an administrative complaint." *Glaser v. Fulton-Montgomery Community Col.*, 50 Fed. Appx. 17, 19 (2d Cir. 2002); *see also* 42 U.S.C. § 2000e-5(e). "A claim is time barred if it is not filed within these time limits." *National Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 109 (2002). There is no merit to Defendant's argument that a 240-day limitations period applies because there is a worksharing agreement between the New York State Division of Human Rights and the Equal Employment Opportunity Commission. *See Campbell v. Cty. of Onondaga*, No. 504-CV-1007 NAM/GHL, 2009 WL 3163498, at *11 (N.D.N.Y. Sept. 29, 2009)("[B]ased

---

[6](...continued)
ENT, P.C. as the sole defendant in this action.

upon a worksharing agreement between the EEOC and the NYSDHR, charges received by the Human Rights Division are automatically deemed dual-filed with the EEOC."); *see also Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 341 (D. Conn. 2014).[7]

### 2. Plaintiff's Administrative Filing

Plaintiff asserts in the Complaint that, to the best of her recollection, she filed her discrimination charge with the New York State Division of Human Rights and the EEOC on August 2, 2013. However, she asserts in her memorandum of law that she filed the EEOC Intake Questionnaire on August 2, 2013, but that the formal "Charge of Discrimination" was not filed until September 25, 2013. Pl. Mem. L. p. 2. Thus, for purposes of determining whether Plaintiff timely filed her administrative claim, it is first necessary to determine whether the EEOC Intake Questionnaire or the Charge of Discrimination is to be used for purposes of an administrative filing date.

There is sufficient authority indicating that, under the correct circumstances, an EEOC Intake Questionnaire can constitute an EEOC charge of discrimination. "The required content for [an EEOC] charge 'is minimal' and 'a charge is sufficient when the

---

[7]("The deferral period . . . found in Title VII, 42 U.S.C. § 2000e–5(c) , . . . gives the state or local agency an exclusive opportunity to resolve the complaint and requires the EEOC to defer any action on its part. That provision has an effect upon the filing deadline with the EEOC. 'In light of the 60–day deferral period, a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed with the EEOC within the 300–day limit.' *E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 111, 108 S .Ct. 1666, 100 L. Ed.2d 96 (1988). These complications may be ameliorated by the relatively common worksharing agreements entered into between the EEOC and a state agency. 'These worksharing agreements typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60–day deferral period in the latter instance.' *Id.* at 112, 108 S. Ct. 1666.")

EEOC receives 'a ... writing' ... from the person making the charge that names the employer and generally describes the allegedly discriminatory acts.'" *Simpson v. City of New York Dep't of Hous. Pres. & Dev.*, 2009 WL 996388, at *5-6 (S.D.N.Y. Apr. 13, 2009)(addressing claims under Title VII and the ADEA)(quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 566 (2d Cir. 2006), *aff'd*, 552 U.S. 389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008)). "[A] writing submitted to the EEOC containing the information required by EEOC interpreting regulations is an EEOC 'charge' . . . only when the writing demonstrates that an individual seeks to activate the administrative investigatory and conciliatory process." *Holowecki*, 440 F.3d at 566–67. "The Second Circuit Court of Appeals has found that an 'EEOC Intake Questionnaire and accompanying affidavit' evidence an intent to 'activate the administrative process' when they possess the following characteristics: (1) a 'forceful tone and content [in] the affidavit' submitted; (2) 'the 'consent' box on the questionnaire form [is 'checked'],' to allow disclosure of one's identity to the alleged discriminating employer; and (3) an unambiguous request that an employer's discriminatory practices come to an end." *Simpson*, 2009 WL 996388, at *5 (quoting *Holowecki*, 440 F.3d at 568–69). "Indeed, the Supreme Court has also specifically emphasized that '[i]n the administrative context ... it appears *pro se* filings may be the rule, not the exception ... [and] [i]t thus is consistent with the purposes of [the ADEA and Title VII] that a charge can be a form, easy to complete, or an informal document, easy to draft.'" *Mohamed v. NYU*, No. 14CV8373 GBD MHD, 2015 WL 3387218, at *10 (S.D.N.Y. May 21, 2015), *report and recommendation adopted*, No. 14 CIV. 8373 GBD MHD, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015), *reconsideration denied sub nom.*

10

*Mohamed v. New York Univ.*, No. 14 CIV. 8373 GBD, 2015 WL 7076124 (S.D.N.Y. Nov. 12, 2015) (quoting *Holowecki*, 552 U.S. at 402–03). "Accordingly, courts have readily found that a so-called 'Intake Questionnaire' may constitute a charge of discrimination where this minimal showing is made, although 'the agency is not required to treat every completed Intake Questionnaire as a charge.'" *Id.* (quoting *Holowecki*, 552 U.S. at 405).

The EEOC Intake Questionnaire attached to the Amended Complaint does not contain a signed affidavit, and although it is signed by Plaintiff, the signature is not made under penalty of perjury or similar attestation. Nevertheless, Plaintiff checked the box indicating: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer ... that I accuse of discrimination information about the charge, including my name." Further, the Intake Questionnaire, read as a whole, is easily interpreted as "a writing" alleging discrimination by the employer in a "forceful tone and content" and constituting "an unambiguous request that an employer's discriminatory practices come to an end." Accordingly, the EEOC Intake Questionnaire meets the minimal requirements to qualify as an EEOC charge, thereby making August 2, 2013 the operative date by which to measure the timeliness of Plaintiff's claims. Three hundred days before this filing is October 6, 2013.

### 3. Hostile Environment Claims

The Court next examines whether Plaintiff's hostile work environment claims were timely filed with the EEOC.

"Since '[a] hostile work environment claim is composed of a series of separate acts

11

that collectively constitute one unlawful employment practice,' the entire time period of the alleged hostile environment 'may be considered by a court for the purposes of determining liability' if 'an act contributing to the claim occurs within the filing period.'" *Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 543-44 (E.D.N.Y. 2014)(quoting *Morgan*, 536 U.S. at 117, and citing *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) and *Caravantes v. 53rd St. Partners, LLC*, 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012)).  However, for a hostile work environment claims to be based on events outside the statute of limitations period, "(1) the acts occurring before the ... cutoff [must] constitute 'part of the same actionable hostile work environment practice,' and (2) at least one act contributing to the claim [must occur] within the filing period*." Clarke v. Intercontinental Hotels Grp., PLC*, 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) (quoting *Morgan*, 536 U.S. at 120); *see Raneri v. McCarey*, 712 F. Supp.2d 271, 281 (S.D.N.Y. 2010);[8] *see also Mohamed v. NYU*, 2015 WL 3387218, at *15 (S.D.N.Y. May 21, 2015).[9] "Thus, in hostile work environment cases, where there is a continuing violation claim, 'if any act falls within the statutory time period,' the Court must 'determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.'" *Maxton,* 4 F. Supp. 3d at 544 (quoting *McGullam*, 609 F.3d at 76). The Court is required "to make an individualized assessment of whether incidents and

---

[8]("To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into, the [statutory time period].")

[9]("In practice, then, the continuing-violation rule applies only to claims amounting to assertions of hostile-work environment or similar claims that 'cannot be said to occur on any particular day' but rather are the product of events that take place 'over a series of days or perhaps years.'")(quoting *Morgan*, 536 U.S. at 115)

episodes are related." *McGullam*, 609 F.3d at 76.

Here, to assert timely hostile work environment claims, Plaintiff must plead at least one incident of race or national origin-based harassment occurring on or after October 6, 2012 and which was part of an on-going course of similar conduct. The Court notes that because Plaintiff failed to meet this pleading standard in the Complaint, the hostile work environment claims were dismissed with leave to replead. *See* 08/12/15 Dec. & Ord., pp. 6-7. Despite this leave, however, Plaintiff has failed to allege facts specifically indicating that any act of race or national origin-based harassment occurred on or after October 6, 2012. The only specific dates cited in the Amended Complaint are May 23, 2011, which is Plaintiff's date of hire; September 2011, which is when co-worker Barbara Barron first told Plaintiff that Plaintiff's perfume was making Barron sick; June 2012, which is when Plaintiff began having emotional issues due to the alleged harassment; and June 24, 2013, which is when Plaintiff discontinued working at Cortland. Am. Compl. ¶ 8. While Plaintiff alleges in wholly conclusory terms that the harassment she was subjected to continue throughout her employment, she fails to provide factual content from which it could be reasonably inferred that an incident of actionable harassment occurring within the limitation period. Rather, Plaintiff presents unadorned, the-defendant-harmed-me, naked assertions devoid of further factual enhancement regarding the dates of the alleged harassment. Plaintiff's Amended Complaint must be dismissed because she fails to allege facts plausibly suggesting that she was subjected to race or national origin-based harassment within the limitations period.

While courts ordinarily grant leave to amend when there is a reasonable basis to conclude that a viable claim could be asserted, Plaintiff was already granted leave to

13

replead because her Complaint failed to sufficiently allege actionable conduct occurring within the limitations period. The fact that the Amended Complaint suffers from the same deficiency leads the Court to question whether Plaintiff can allege facts plausibly suggesting that she was subjected to harassing conduct within the limitations period. Nonetheless, and in an abundance of caution, the Court will allow Plaintiff one more opportunity to replead her hostile work environment claims. This will be the final opportunity to plead facts from which the Court could reasonably conclude that at least one act of race or national origin-based harassment occurred on or after October 6, 2013.

### 4. Discrete Act Discrimination

Assuming that Plaintiff asserts discrete act discrimination claims based on being told to stay out of work for a week-and-a- half, and being forced to eat her meals in the conference room, *see Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010);[10] *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007),[11] the claims suffer from the same temporal ambiguity as the hostile work environment claims. Accordingly, any discrete act claim asserted in the Amended Complaint is dismissed with leave to replead.[12]

---

[10](To state a prima facie case, a plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination" based on her membership in the protected class.")

[11]( To qualify as an "adverse employment action," an action must "cause a 'materially adverse change in the terms and conditions of employment.. . .")(citation omitted)

[12]Although it appears from the Amended Complaint that Plaintiff was told to stay out of work for a week-and-a-half in late 2011 or early 2012, that conclusion is not certain. Of course, if Plaintiff intends to replead this as an independent claim she must do so in accordance with the dictates of Fed. R. Civ. P. 11(b).

### b. Rule 10(b)

Defendant's Fed. R. Civ. P. 10(b) challenge is well taken, *see* fn. 3, *supra*, but is rendered moot by the decision to dismiss the Amended Complaint. However, if Plaintiff elects to replead any claim, she must do so in accordance with the dictates of Fed. R. Civ. P. 10.

### c. Claims Against Individual Supervisors

To the extent Plaintiff asserts Title VII claims against Cortland's "agents, managers and assigns" in their individual capacities, those claims are dismissed with prejudice. *See* 08/12/15 Dec. & Ord., p. 4 (In the Second Circuit, individuals may not be held liable under Title VII) (citing *Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998)).

### d. Number of Employees

Defendant's argument that the Amended Complaint should be dismissed because Plaintiff has failed to plead that Cortland has a sufficient number of employees to qualify as an employer under 42 U.S.C. § 2000e(b) will not be addressed here. This is because the argument is raised for the first time in a reply memorandum of law, and because the issue is rendered moot by the dismissal of the Amended Complaint. Nonetheless, if Plaintiff elects to replead any of the Title VII claims, she must do so in accordance with the dictates of Fed. R. Civ. P. 11(b).[13] This would necessarily require a good faith pleading

---

[13]Rule 11(b) provides in pertinent part that "[b]y presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and
(continued...)

15

that Cortland ENT, P. C. had, at relevant times, sufficient employees to satisfy 42 U.S.C. § 2000e(b).

### e. State Law Claims

Although the Caption and first unnumbered paragraph of the Amended Complaint indicate that the action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, Plaintiff asserts in the jurisdictional paragraph that "[j]urisdiction is specifically conferred . . . by the afore-mentioned statutes, ... [and that] jurisdiction may also be appropriate under ...  any related claims under New York law."  Am. Compl. ¶ 1.  However, despite this assertion of jurisdiction potentially arising under New York law (which appears merely to be a vestige left over from using a "form complaint"),  the Amended Complaint contains no specific allegations of violations of the New York State Human Rights Law or any other New York law.  Accordingly, any state law claim asserted in the Amended Complaint is dismissed without prejudice to repleading.

### V.    CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's Amended Complaint, Dkt. # 21, is GRANTED, and the Amended Complaint is DISMISSED.   Plaintiff is granted leave of twenty (20) days from the date of this Decision and Order to re-plead certain of the dismissed claims as set forth above.  Failure to file a Second Amended Complaint with in twenty (20) days will be deemed an abandonment of

---

[13](...continued)
belief, formed after an inquiry reasonable under the circumstances:   . . .  (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2), (b)(3).

all claims and judgment will be entered in favor of Defendant.  Upon the filing of a Second Amended Complaint, Defendant may renew its 12(b)(6) motion.

**IT IS SO ORDERED.**

Dated: June 1, 2016

_____
Thomas J. McAvoy
Senior, U.S. District Judge